No. 13-03853

_____

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

UNIVERSITY OF NOTRE DAME,
*Plaintiff-Appellant,*

v.

KATHLEEN SEBELIUS, in her official capacity as Secretary of the U.S. Department of Health and Human Services; THOMAS PEREZ, in his official capacity as Secretary of the U.S. Department of Labor; JACOB J. LEW, in his official capacity as Secretary of the U.S. Department of the Treasury; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF LABOR; and U.S. DEPARTMENT OF THE TREASURY,
*Defendants-Appellees,*

&

JANE DOE 1, JANE DOE 2, and JANE DOE 3,
*Intervenors-Appellees.*

_____

Appeal from the United States District Court
For the Northern District of Indiana
District Court Case No. 3:13-CV-1276
The Honorable Philip P. Simon

_____

**PLAINTIFF-APPELLANT'S MOTION FOR LIMITED REMAND TO SEEK
DISCOVERY AND SUPPLEMENT THE RECORD, OR IN THE ALTERNATIVE,
TO DISMISS**

_____

JONES DAY
Matthew A. Kairis (counsel of record)
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43216
(614) 469-3939

ATTORNEY FOR PLAINTIFF-APPELLANT UNIVERSITY OF NOTRE DAME

Plaintiff-Appellant the University of Notre Dame ("Notre Dame") moves this Court for a limited remand to allow the parties to seek discovery and supplement the record, or in the alternative, moves to voluntarily dismiss its appeal under Federal Rule of Appellate Procedure 42(b). This appeal involves the district court's denial of Notre Dame's motion for preliminary injunction regarding the Affordable Care Act's ("ACA") contraceptive, abortifacient, and sterilization services mandate ("the Mandate"). In the district court, Notre Dame developed a factual record to support the preliminary injunction. The Government did not contest Notre Dame's facts and relied solely on the administrative record to support its arguments. On January 14, 2014, the day after Notre Dame filed its initial brief in this Court, the Court granted a motion allowing the intervention of three women who claim to be students at Notre Dame, and who make several new factual allegations and intend to present new arguments for which there is an incomplete and potentially misleading factual record. (Doc. 22.)

Because this appeal now requires additional factual development before it warrants this Court's attention, this Court should grant Notre Dame's request for a limited remand or dismissal. Notre Dame would be severely prejudiced by proceeding in a premature appeal with an incomplete factual record, and as the prevailing parties, neither Intervenors-Appellees nor the Government Appellees would be prejudiced by any delay. In addition, the development of a more complete factual record before argument will preserve judicial resources and avoid piecemeal appeals to this Court based on different

evidence. Given the expedited briefing schedule in this appeal, Notre Dame asks that any response from either set of Appellees be due by Thursday, January 23, 2014.

## BACKGROUND

In May 2012, Notre Dame sought to enjoin enforcement of the ACA's Mandate. (AA64 ¶ 4.)[1] The district court dismissed that lawsuit on ripeness grounds. (*Id.*) In July 2013, the Government issued a final rule setting out the details of the Mandate, its exemptions, and its so-called "accommodation." 78 Fed. Reg. 39,870 (July 2, 2013). Over the next few months, Notre Dame, along with the United States Conference of Catholic Bishops, analyzed the theological implications of the final rule. (AA64-65 ¶¶ 6-9.) During this time, Notre Dame sought clarification of the Final Rule from its employee health insurance plan's third party administrator. (*Id.* ¶ 10.) Having determined that the ACA's "accommodation" ran afoul of Notre Dame's sincerely held religious beliefs, Notre Dame filed this lawsuit on December 3, 2013. (AA1.) Notre Dame is in the same position as multiple litigants in others courts who have obtained injunctions; it faces massive fines if it does not take the actions that compromise its religious beliefs.

With the implementation of the Mandate only weeks away, Notre Dame moved for a preliminary injunction in the district court. (Dist. Ct. Doc. 9.) In support of its motion, Notre Dame submitted several affidavits, comments from

---

[1] Where available, citations are to the required short appendix and the supplemental appendix filed in support of Notre Dame's principal brief. *See* docs. 19 & 20.

Catholic leaders, objectionable advertising samples, news releases, and transcripts from other court proceedings.  (*See generally* Dist. Ct. Docs. 11, 16, 18, 24-26.)  The Government-Defendants did not dispute Notre Dame's factual record, nor did they offer any facts outside the administrative record.  (Dist. Ct. Doc. 13.)  After considering the parties' arguments and the evidence before it, the district court denied Notre Dame's motion for a preliminary injunction just two days before the Mandate was set to go into effect.  (SA1.)  Notre Dame immediately sought review of that order by this Court (Dist. Ct. Doc. 43), and the district court stayed all remaining proceedings pending appeal (Dist. Ct. Doc. 54).[2]

A few days later, three women claiming to be students at Notre Dame sought to intervene anonymously in the appellate proceedings.  The women alleged, *inter alia*, that they participate in Notre Dame's student health insurance plan; could not afford unsubsidized contraceptives; and need contraceptives so as to maintain control over their "sexual life, bodily integrity, and reproductive capacity."  (Dist. Ct. Doc. 34-1, at 1.)  The women sought to raise a number of new arguments including Notre Dame's rights under the Religious Freedom Restoration Act (RFRA), its ability to opt out of the healthcare marketplace entirely, and the importance of contraceptive coverage.  (Doc. 12, at 4-10.)  On January 14, 2014, over Notre Dame's objection, this

---

[2] As the district court considered the parties' arguments, the now-Intervenors-Appellees moved to intervene in the district court.  (Dist. Ct. Doc. 33.)  The district court stayed its proceedings before it issued an order on the motion to intervene.

Court granted both the motion to intervene and the women's request to proceed anonymously. (Doc. 22.)

## ARGUMENT

### I. This Court Should Remand this Case for the Limited Purpose of Supplementing the Record

This case is not what it was just a few weeks ago. What Notre Dame had argued—through its evidence and argument in the district court, and in its emergency motion and principal briefing before this Court—addressed the incompatibility between the Mandate and Notre Dame's religious beliefs. Now, as Intervenors-Appellees seek to present a number of new arguments, this case's scope has expanded considerably.[3] The record before this Court does not reflect the shift in the focus of the appeal.

When the record on appeal is not properly developed and thus precludes meaningful appellate review, this Court may remand to the district court for the limited purpose of allowing for further evidentiary development. *See United States v. Taylor*, 277 F. App'x 610, 612-13 (7th Cir. 2008) (holding that because the Court must make its determinations "based on all of the relevant evidence," an evidentiary hearing was required); *cf. Gabbanelli Accordions & Imports, LLC v. Gabbanelli*, 575 F.3d 693, 697 (7th Cir. 2009) ("[O]ur intention was to order

---

[3] Notre Dame maintains that the true focus of this case should be on the Mandate's effect on Notre Dame's religious freedoms. Given this Court's order granting the motion to intervene, however, Notre Dame must be able to address and rebut the Intervenors-Appellees' new factual allegations and arguments. The issue is made more complex because the Intervenors-Appellees have been allowed to proceed anonymously. Notre Dame has thus been stripped of the ability to check the accuracy of the alleged facts. In this posture facts that are anonymously alleged stand in the record as effectively unrebuttable.

a limited remand to give the parties an opportunity to supplement the record with the judgment (and pertinent interpretive materials), which might assist us in deciding the appeal."). A limited remand comports with the Supreme Court's instruction that "the proper role of the court of appeals" is to ensure that its conclusions "are juridically sound and supported by the record." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980).

A limited remand to seek discovery and supplement the record is particularly appropriate here. The Intervenors-Appellees contend that their involvement is necessary to demonstrate that the Mandate furthers a compelling governmental interest, and that their interests purportedly weigh on the balance of harms and whether a preliminary injunction is warranted. *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). As parties, the Intervenors-Appellees are subject to discovery and Notre Dame is entitled to present evidence to contradict their allegations and arguments. 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1920 (3d ed.) ("[T]he intervenor is treated as if the intervenor were an original party and . . . . is entitled to litigate fully on the merits once intervention has been granted."); *see also HBB Ltd. P'ship v. Ford Motor Co.*, 92-C-3287, 1992 WL 348870, at *2 (N.D. Ill. Nov. 10, 1992) ("The Intervenors will be subject to extensive discovery in this case and maintain an essential role in the litigation [and] the Intervenors possess and control many important documents.").

Due to the insufficient factual record currently before this Court, however, neither this Court nor Notre Dame is able to test the veracity of

Intervenors-Appellees' statements. Notre Dame, for example, is unable to determine whether Intervenors-Appellees will be students during the 2014-2015 plan year, or if they are in fact unable to afford contraceptives. Notre Dame is similarly unable to test Intervenors-Appellees' biases, motives, credibility, prior inconsistent statements, or otherwise attempt to impeach their statements as they relate to Notre Dame. Although Intervenors-Appellees' state in their reply brief that they could produce supplemental declarations under seal that answer some of these questions (doc. 19, at 3 n.1), this Court cannot rely solely on their disclosures and averments to assess their claims. *See* Fed. R. App. P. 28(a)(8)(A) (requiring that an appellee's brief contain the appellee's "contentions and the reasons for them, with citations to the authorities *and parts of the record on which the [appellee] relies*") (emphasis added). Nor is it fair to Notre Dame to deprive it of such fundamental information regarding parties in this case. *See Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996) (noting that a party's strategy "will ordinarily include direct challenges to the [opponent's] credibility"). Upon remand, appropriate safeguards that would balance Intervenors-Appellees' privacy and Notre Dame's rights could be easily developed and observed.

    Moreover, Intervenors-Appellees seek to present arguments that require further factual development by Notre Dame. As just one example, Intervenors-Appellees argue the Mandate does not significantly burden Notre Dame's religious freedoms because Notre Dame could avoid self-certification by discontinuing student health insurance plans altogether. (Doc. 12, at 4-10.)

Had such an argument been raised in the district court, Notre Dame would have presented evidence to rebut it. Notre Dame, for instance, could have presented affidavits of educational experts discussing the institutional harms of not providing students with health insurance; evidence on whether students would actually use the vouchers that Intervenors-Appellees encourage; evidence on the importance of health insurance coverage to educational achievement; and analyses of how schools that have adopted health insurance vouchers have fared. None of this exists in the record as it currently stands, nor did Notre Dame have an opportunity to develop the record in the district court. It would be fundamentally unfair to prevent Notre Dame from developing a defense to new facts and arguments not previously raised in the district court. *See Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 812 (7th Cir. 1988) (requiring arguments on appeal to be presented in the district court "in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996) (noting that a district court's ruling may be reversed "if the district court has not provided" a party with "notice and an opportunity to respond" to extrinsic materials).

    Allowing the parties an opportunity to develop the record would also conserve judicial resources without prejudicing the non-moving parties. This appeal concerns the district court's denial of a preliminary injunction. Given the factual development that is necessary for a full record, any decision by this

Court would likely be of limited guidance to the district court on remand and when it decides Notre Dame's right to a permanent injunction.  It would be far better for this Court to address the important constitutional issues raised in this case with a complete and accurate factual record.  *See Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 125-26 (7th Cir. 1997) ("Multiplication of appeals would delay final adjudication and increase the expense of getting there, without producing material benefits."); *Tompkins v. Cent. Laborers Pension Fund*, No. 4:09-cv-4004, 2012 WL 264407, at *3 (C.D. Ill. Jan. 30, 2012) (adjudicating counterclaim in order to "promote judicial efficiency by protecting against piecemeal litigation in which the appellate court would have to go over some of the same subject matter in multiple appeals").  And, because neither this Court nor the district court has enjoined enforcement of the Mandate, no party is prejudiced by any delay.  To ensure a proper record, the Court should order a limited remand to allow the parties to conduct discovery and supplement the record before this Court.

     In the alternative, if the Court does not see fit to grant the limited remand, Notre Dame requests that it be allowed to voluntarily dismiss its appeal under Federal Rule of Appellate Procedure 42(b) so that such factual development may occur in the proceeding which will ensue wherein Notre Dame's request for permanent injunction will be adjudicated.  This Court operates under "a presumption in favor of dismissal," *Albers v. Eli Lilly & Co.*, 354 F.3d 644, 646 (7th Cir. 2004), and "has broad discretion in granting a voluntary motion to dismiss an appeal," 20A-342 Moore's Federal Practice –

Civil § 342.12 (citing *Am. Auto. Mfrs. Ass'n v. Comm'r, Mass. Dep't of Envtl. Prot.*, 31 F.3d 18, 22 (1st Cir. 1994)). As Notre Dame seeks to litigate these issues with a fully developed factual record, it is not seeking to evade appellate review. Indeed, Notre Dame fully expects to be back in this Court—either from its appeal or the Government's appeal—after the facts, including those relating to Intervenors-Appellees' new allegations, have been appropriately developed and following the district court's ruling on a permanent injunction. In the event that its dismissal is granted, Notre Dame asks that the appeal be dismissed with each party to bear its own costs.

## II.  This Court Should Expedite Review of this Motion

Should either set of Appellees oppose this motion, Notre Dame asks that this Court require such a response by Thursday, January 23, 2014. Under the expedited briefing schedule, Appellees' merits briefs are due on Monday, January 27, and Notre Dame seeks to minimize Appellees' costs due to this change in circumstances if at all possible.

## CONCLUSION

The record, as it stands, is insufficient to assess the arguments now before this Court. Additional facts would yield a better decision without prejudicing any of the non-moving parties. Notre Dame thus requests that this Court remand this case for the limited purpose of allowing the parties to seek discovery and supplement the record, or in the alternative, dismiss this appeal. Finally, Notre Dame asks that any response from either set of Appellees be due by Thursday, January 23, 2014.

Respectfully submitted, this the 20th day of January, 2014.

        By: *s/ Matthew A. Kairis*
        Matthew A. Kairis (OH No. 55502)
        (Counsel of record)
        JONES DAY
        325 John H. McConnell Blvd., Suite 600
        P.O. Box 165017
        Columbus, OH 43216
        (614) 469-3939

        *Counsel for Plaintiff-Appellant University of Notre Dame*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 20, 2014, I electronically filed a true and correct copy of the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: *s/ Matthew A. Kairis*
Matthew A. Kairis (OH No. 55502)
(Counsel of record)
JONES DAY
325 John H. McConnell Blvd., Suite 600
P.O. Box 165017
Columbus, OH 43216
(614) 469-3939

*Counsel for Plaintiff-Appellant University of Notre Dame*
